MOBLEY, superintendent of banks, *et al.* v. JACKSON.

No. 7684. NOVEMBER 13, 1930.

*Little & Dickerson,* for plaintiffs in error.

*H. L. Jackson* and *L. E. Lastinger,* contra.

HINES, J. G. A. Jackson is a Confederate veteran, and has been drawing a pension as such from the State. From time to time he saved from his pension the sum of $125, which he deposited, on November 16, 1927, in the First National Bank of Cook County, taking therefor a time certificate, bearing interest. This deposit was made and the time certificate taken therefor upon the advice of the cashier of said bank, and the bank took the funds deposited knowing that they were the pension funds of Jackson.

The bank became and still is insolvent, and is now being liquidated by the State Banking Department. Jackson has been paid by the liquidating agent of the bank 15 per cent. of the amount so deposited. Jackson filed his petition against Mobley as superintendent of banks, and Copeland as liquidating agent of said bank, in which he sought to have said pension money so deposited by him in the bank declared to be a superior lien upon all the funds of the bank in the hands of the superintendent of banks, and to obtain an order requiring that officer and the liquidating agent to pay to him the amount of said deposit, less the dividend which had been paid thereon. Jackson bases his claim upon the provision of the pension act which declares that "The pensions of Confederate soldiers, and widows of Confederate soldiers, shall be exempt from garnishment and all other legal process, no matter in whose hands the pension or pensions may be; and no court or ministerial officer in this State shall ever have jurisdiction or authority to issue or enforce any garnishment or other process against the same." Penal Code (1910), § 1495. He contends, that, when he deposited his pension money in this bank and took an interest-bearing certificate therefor, the obligation of the bank to pay this certificate became a substitute for the pension, impressed with the character of the pension; and that when the superintendent of banks took possession of this insolvent bank for liquidation, it became his duty, on demand of the pensioner, to restore to him the equivalent of his deposit as a fund not subject to administration. The trial judge sustained this contention and overruled a demurrer filed by the defendants to Jackson's petition. To this judgment the defendants excepted and took the case to the Court of Appeals for review. The Court of Appeals affirmed the judgment of the trial court. *Mobley* v. *Jackson, 40 Ga. App.* 761 (151 S. E. 522). The case is in this court upon a certiorari brought to review the judgment of the Court of Appeals.

Our Confederate pension law does not in any way define or restrict the uses which the pensioner can make of his pension money. He can do as he pleases with it. He can save it or spend it. He can invest it or keep it in specie. He can even give it away. He can make a general deposit of it in a bank, subject to his check, or he can make a special deposit of it. He can deposit it and take therefor a time certificate, bearing interest. If

he makes a general deposit of his pension money subject to check, or if he deposits it and takes therefor an interest-bearing time certificate, the title to the money so deposited immediately passes to the bank, and the relation of debtor and creditor is at once created between the parties. *Ricks* v. *Broyles,* 78 *Ga.* 610 (3 S. E. 772, 6 Am. St. R. 280); *Schofield Mfg. Co.* v. *Cochran,* 119 *Ga.* 901 (47 S. E. 208); *McGregor* v. *Battle,* 128 *Ga.* 577, 580 (58 S. E. 28, 13 L. R. A. (N. S.) 185). There is nothing in our Confederate pension law which in any way changes this familiar principle of law. So when the pensioner deposited his pension money in this bank, and took a time certificate therefor, bearing interest, the title to this money passed immediately to the bank, and the relation of debtor and creditor immediately arose between the pensioner and the bank. There is no provision in our law which expressly gives to a Confederate pensioner a special lien upon the funds of an insolvent bank, taken over by the superintendent of banks for liquidation, for pension money deposited by him therein, or which entitles such depositor to be first paid out of the funds of such bank, for his pension money so deposited, over all other creditors of the bank.

While we concede that the principle enunciated in the first headnote of the opinion of the Court of Appeals is correct, we do not think that it is applicable under the fact of this case. We further agree with the Court of Appeals that section 1495 of the Penal Code is to be given a liberal construction in favor of the pensioner. Giving to this provision such liberal construction, the pensions of Confederate soldiers and their widows are exempt from garnishment and all other legal process, no matter in whose hands the pension or pensions may be, and no matter whether the pension is in the form in which it was received, or whether it has been changed into some other form. So if this pension money had been deposited in the bank, subject to check, and the pensioner had received therefor only a deposit slip, such fund would be exempt from administration by a receiver of his property. Burgett *v.* Fancher, 35 Hun (N. Y.), 647. So such a fund would be exempt from seizure by a receiver of the depositor's property, although the bank was to pay interest on the deposit. Stockwell *v.* National Bank, 36 Hun (N. Y.), 383. So where such fund is deposited in a bank by the pensioner, and a certificate of deposit, bearing interest, is given

therefor by the bank to the pensioner, the money payable by such obligation of the bank to the pensioner could not be subjected to garnishment or to any other process against the pensioner. So if the pension money of a Confederate soldier is converted into property of any kind, such property under this statute can not be subjected to any process against the pensioner. So the deposit of a pension check in a savings bank is exempt. Price v. Savings Society, 64 Conn. 362 (30 Atl. 139, 42 Am. St. R. 198). So if a pensioner should invest his pension money in personal property, the latter would not be liable to be levied upon by any process in favor of his creditor or creditors. The same would be true if his pension funds had been invested in a home. The home would stand in place of the pension, and would be exempt under our statute. Yates County National Bank v. Carpenter, 119 N. Y. 550 (22 N. E. 1108, 7 L. R. A. 557, 16 Am. St. R. 855); 25 C. J. 78 (§ 130), c. So if the pensioner had loaned out his pension money and taken a note therefor, the debtor could not be garnisheed at the instance of a creditor of the pensioner. So pension money received either in check or in specie is exempt. A pensioner may use his pension money in any manner he may desire for his own benefit, or that of his family, free from the attacks of creditors. Holmes v. Tallada, 125 Pa. 133 (17 Atl. 238, 11 Am. St. R. 880). So in this case the fund due upon the obligation of the bank, represented by its time certificate given to the pensioner for his pension money deposited therein, can not be subjected by garnishment or other process against the pensioner.

We do not agree with the Court of Appeals that where a bank receives a deposit with knowledge that it is pension money, the obligation of the bank to the pensioner is a substitute for the pension, impressed with the same character as the pension money so deposited; and that where the superintendent of banks subsequently takes possession of a bank for liquidation because of its insolvency, it is his duty, on demand of the pensioner, to restore to him from the general funds of the bank a sum equivalent to his deposit, as a fund not subject to administration. We can not agree with the ruling made by the Court of Appeals in the second headnote of its opinion in this case, for the reasons hereinafter stated. Our exemption statute exempts the pensioner "from garnishment and all other legal process, no matter in whose hands the pension or

pensions may be." The garnishment here referred to is one issued upon a suit against the pensioner and against some person having in his hands the pension money of the pensioner. This is likewise true of "all other legal process." The language that "no court or ministerial officer in this State shall ever have jurisdiction or authority to issue or enforce any garnishment or other process against the same," means against the pension of the pensioner, no matter in whose hands the same may be. Manifestly the intention of the legislature, in passing this statute, was to surround the pensioner with protection against his creditors, and to prevent his creditors seizing the subject-matter of the pension and thus deprive him of its use. The purpose of the statute was to defend the pensioner against the onslaught of his creditors. Andrew *v.* Colorado Savings Bank, 205 Iowa, 872 (219 N. W. 62).

While it is true that where a bank receives a deposit with knowledge that it is pension money, the resulting obligation of the bank to the pensioner is substituted for the pension, it does not follow that where the superintendent of banks subsequently takes possession of a bank because of its insolvency, it is his duty on demand of the pensioner to restore to him the equivalent of his deposit as a fund not subject to administration. What the pensioner got in place of his pension money is the obligation of the bank, represented by its certificate, to pay him the amount of money represented therein. The pensioner got the time certificate in place of the pension money. This money when deposited in the bank became the property of the bank. The fund deposited was no longer impressed with the character of the pension. The obligation of the bank stood in place of the pension. The conversion of the pension money into a time certificate of the bank, bearing interest, was not a wrongful conversion of the pension funds. The pensioner could make such investment in order to earn money on his saved pension money. It does not logically follow that because of such investment the pensioner would be entitled to payment. from the general funds of the bank over the preferred claims specified in section 19 of the act of August 26, 1925 (Ga. L. 1925, pp. 119, 129). The deposit of the money and the taking from the bank of the time certificate therefor, bearing interest, put the obligation of the bank represented by such certificate in the place of the pension money, and the money due on such obligation could

not be subjected to any garnishment or other legal process against the pensioner; but such transaction would not have the effect of making the payee in the time certificate a preferred creditor entitled to payment out of the funds of the bank in preference to those creditors given priority by the act of 1925. This would amount to giving to the pensioner a preference not given by the banking act. The purpose of this exempting statute was not to give to the pensioner any lien or priority of payment for money deposited in a bank, but to protect him against garnishment or other legal process sued out by his creditor to enforce a debt due by him to such creditor. So we reverse the judgment of the Court of Appeals and remand the case to that court for further action in accordance with this opinion.

 *Judgment reversed. All the Justices concur, except*

HILL, J., dissenting. For the reasons given by the Court of Appeals, and the authorities cited, I dissent from the decision rendered in this case by the majority of the court. The Penal Code (1910), § 1495, which exempts pensions of confederate soldiers and their widows "from garnishment and *all other legal process* [italics mine], no matter in whose hands the pension or pensions may be," etc., would be useless if a bank can receive such pension money on deposit with the knowledge that it is such, and, on failure of the bank, have the superintendent of banks distribute this pension money along with other assets of the bank to the general depositors of the bank, without giving the pensioner the protection accorded him by a proper construction of the statute.